**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| HEALTHY GULF, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 26-1118 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 25, 32 |
| | : | | |
| DOUGLAS BURGUM, Secretary of the Interior, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

## GRANTING FEDERAL DEFENDANTS' MOTION TO DISMISS

## I. INTRODUCTION

This case is one of a trio before this Court concerning the Endangered Species Committee's (the "Committee") decision to grant an exemption from certain oil and gas projects in the Gulf Mexico, also known as the Gulf of America. *See generally Nat. Res. Def. Council, Inc. v. Burgum* ("*NRDC*"), No. CV 26-1116 (RC), 2026 WL 3521211 (D.D.C. Nov. 16, 2026); *Ctr. for Biological Diversity v. Burgum*, No. CV 26-940 (RC), 2026 WL 3575718 (D.D.C. Nov. 20, 2026). The Court previously dismissed both other cases because it concluded that Congress channeled challenges to the Committee's decisions to the courts of appeals and therefore this Court lacked subject-matter jurisdiction over cases raising such challenges. *See NRDC*, 2026 WL 3521211, at *7, *12; *Ctr. for Biological Diversity*, 2026 WL 3575718, at *3. The Court now does the same here.

## II. BACKGROUND

The Court has already described the statutory framework and factual background for this case at length in its prior opinion in a related case. *See NRDC*, 2026 WL 3521211, at *2–5.

Although the Conservation Groups' complaint differs from NRDC's, it covers much of the same ground. The Court therefore provides only a brief background and assumes the parties' familiarity with the facts and statutory framework.

**A. Statutory Framework**

This case concerns the Committee's authority to grant exemptions to certain requirements under the Endangered Species Act (the "ESA"). Congress authorized the Committee to "review any application submitted to it . . . and determine . . . whether or not to grant an exemption." 16 U.S.C. § 1536(e)(2). If granted, these exemptions would insulate a covered actor from two requirements under the ESA. First, it protects them from the requirement that they ensure their projects are "not likely to jeopardize the continued existence of any endangered species." *Id.* § 1536(a)(2); *see id.* § 1536(e)(2). Second, it protects them from the requirement to avoid harming listed endangered species, at least while conducting work "necessary" for the project. *Id.* § 1536(o)(1); *see id.* § 1538(a); *id.* § 1532(19). Before granting an exemption, the statute generally requires the Committee to abide by certain procedural requirements under Section 1536(h). For example, the Committee must determine, based on evidence from a hearing, that "there are no reasonable and prudent alternatives to the agency action" and that the project's "benefits . . . clearly outweigh the benefits of alternative courses of action." *Id.* § 1536(h)(1)(A).

The two most important provisions for this case are subsections (j) and (n). Subsection (j) allows the Secretary of Defense[1] to require the Committee to grant an exemption.

---

[1] Last year, the President authorized the Secretary of Defense to use a secondary title of Secretary of War. *See* Restoring the United States Department of War, Exec. Order No. 14,347, § 2(a), 90 Fed. Reg. 43,893, 43,893 (Sep. 5, 2025) ("The Secretary of Defense is authorized the use of this additional secondary title—the Secretary of War . . . ."). Some of the documents in

It provides that "[n]otwithstanding any other provision of this chapter, the Committee *shall grant* an exemption for any agency action if the Secretary of Defense finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j) (emphasis added). Subsection (n) concerns which courts may hear challenges to the Committee's decisions. "Any person . . . may obtain judicial review, under [the Administrative Procedure Act ("APA")], of any decision of the Endangered Species Committee under subsection (h) *in the United States Court of Appeals*." *Id.* § 1536(n) (emphasis added).

**B. Factual Background**

Plaintiffs Healthy Gulf, Sierra Club, Friends of the Earth, Turtle Island Restoration Network, and Oceana, Inc. (collectively, the "Conservation Groups") are all environmental organizations that work to protect endangered species. *See* Compl. Decl. & Injunc. Relief ("Am. Compl.") ¶¶ 13–17, ECF No. 19. They challenge the Committee's decision to grant the exemption—including by disputing that the Committee was even "properly constituted or convened for th[at] decision." *Id.* ¶ 1 & n.1.

The Conservation Groups allege that oil and gas activities in the Gulf "threaten[ ]" the Gulf ecosystem, which "is home to some of the nation's most treasured wildlife, including more than two dozen species protected as either threatened or endangered under the ESA." *Id.* ¶¶ 6–7. The oil and gas activities cause "vessel strikes," "noise" from "seismic surveys," "bottom habitat destruction," and "water pollution," among other environmental damage. *Id.* ¶ 77.

In March 2026, Secretary of Defense Pete Hegseth "found it necessary for reasons of national security to exempt Gulf oil and gas activities from the ESA's requirements," invoking

---

this case use that title, but the Court uses Secretary of Defense in this opinion for clarity because it is the title Congress used in the relevant statute.

his authority under 16 U.S.C. § 1536(j). *Id.* ¶ 94. He then "requested that Secretary [of the Interior Doug] Burgum, acting in his capacity as Chairman of the Endangered Species Committee, convene a meeting of the Committee as soon as practicable to exempt" those activities. *Id.* ¶ 94. Later that month, the Committee convened and voted unanimously to grant the exemption in a meeting "last[ing] less than 17 minutes." *Id.* ¶ 102. In a written decision published shortly thereafter, the Committee explained that it was granting an exemption to "all oil and gas exploration, development, and production activities associated with" certain federal programs. *Id.* ¶ 103. The Committee explained that it was making the decision "pursuant to subsection (h)." Endangered Species Committee Decision & Order, 91 Fed. Reg. 16,966, 16,966 (Apr. 3, 2026). Nevertheless, in the Committee's view, most of the processes in subsection (h) did "not apply" because of the Secretary of Defense's national-security finding. *Id.* at 16,966; *see also* Am. Compl. ¶ 104.

**C. Procedural Posture**

As noted above, the Committee's exemption decision prompted many lawsuits, including two other suits before this Court. *See NRDC*, 2026 WL 3521211, at *5; *Ctr. for Biological Diversity*, 2026 WL 3575718, at *3. There is also a consolidated case in the Fifth Circuit. *See* Consolidation Order, *Am. Energy v. Burgum*, No. 26-60240, ECF No. 9 (5th Cir. Apr. 21, 2026).

In this case, like the other cases before this Court, the Federal Defendants[2] move to dismiss the Conservation Groups' claims under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.[3]

## III. LEGAL STANDARD

To survive the Federal Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Conservation Groups must plausibly allege that this Court has jurisdiction over their claims. *See Humane Soc'y of the U.S. v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2017). To the extent this Court's jurisdiction turns on issues of statutory interpretation, rather than issues of fact, the Court need not defer to the Conservation Groups' legal conclusions about the meaning of the statute. *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015); *Kōloa Rum Co. v. Noem*, 822 F. Supp. 3d 8, 34 (D.D.C. 2026).

[2] "Federal Defendants" refers collectively to Defendants Secretary of the Interior Doug (Douglas) Burgum, Secretary of Defense Pete Hegseth, Secretary of Agriculture Brooke Rollins, Acting Secretary of the Army Adam R. Telle (substituted for former Secretary of the Army Daniel P. Driscoll), Chair of the Council of Economic Advisers Christopher Phelan (substituted for Acting Chair of the Council of Economic Advisers Pierre Yared), Administrator of the Environmental Protection Agency Lee M. Zeldin, and Administrator of the National Oceanic and Atmospheric Administration Neil Jacobs, all acting in their official capacity. Intervenor Defendant American Petroleum Institute ("API") joined the Federal Defendants' motion to dismiss. *See* Notice Joinder Defs.' Mot. Dismiss, ECF No. 30.

[3] During the briefing for this motion, a group of former government officials sought leave to file a brief as *amicus curiae* in support of the Conservation Groups. *See* Mot. Former Gov't Officials Leave File *Amicus Curiae* Br. Supp. Opp'n Mot. Dismiss at 1, ECF No. 32-1. Their brief argues that "the process created by the ESA and its implementing regulations were used for decades to successfully protect national security interests while balancing those interests with legitimate environmental concerns," suggesting that the Committee's actions here were likely unnecessary to preserve national security. *Id.* at 2. Both the Federal Defendants and API oppose the motion because it focuses on merits issues which they view as "irrelevant to, and beyond the scope of, the single [jurisdictional] issue presented in" the pending motion. Fed. Defs.' Resp. Mot. Leave File Amicus Br. at 2, ECF No. 36; *see also* API's Resp. Mot. Former Gov't Officials Leave File *Amicus Curiae* Br. at 1–2, ECF No. 38 (making a similar argument and arguing that the proposed *amici* failed to contact them beforehand as required by local rules). Although the Court agrees that the *amicus* brief is not directly relevant to the jurisdictional issue at hand, the Court has reviewed it and concludes that it nonetheless provides helpful background on the history of the statutory scheme at issue. The Court therefore grants the request for leave to file the *amicus* brief.

## IV. ANALYSIS

The Conservation Groups raise three claims: the first challenges the Committee's exemption decision, Am. Compl. ¶ 117; the second attacks the Secretary of Defense's national-security finding, *id.* ¶ 127; and the third focuses on the Secretary of the Interior's role as chair of the Committee, *id.* ¶¶ 131–32. The Federal Defendants move to dismiss all three claims for lack of subject-matter jurisdiction because, they argue, the claims should have been brought in the courts of appeals. *See* Defs.' Mem. P. & A. Supp. Mot. Dismiss at 1, ECF No. 25-1; *see also id.* at 15–17 (addressing specifically the second and third counts). The Conservation Groups, however, do not distinguish between their claims, instead focusing all their efforts on arguing that this Court has jurisdiction over challenges to the Committee's exemption decision. *See* Pls.' Opp'n to Fed. Defs.' Mot. Dismiss ("Pls.' Opp'n") at 17–37, ECF No. 28. Because the Conservation Groups do not separately defend the second and third claims, this Court follows suit and assumes that if it lacks jurisdiction over the Committee's exemption decision, then it also lacks jurisdiction over the Conservation Groups' remaining claims. *See Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 611 (D.C. Cir. 2020) ("Arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice." (cleaned up)).[4]

Congress created a special review scheme for challenges to Committee decisions made under subsection (h). *See* 16 U.S.C. § 1536(n). Congress channeled those decisions to the courts of appeals and ousted district courts, like this Court, of jurisdiction over them. *See id.*; *Wagner v. Fed. Election Comm'n*, 717 F.3d 1007, 1012–13 & n.5 (D.C. Cir. 2013) (per curiam)

[4] At any rate, even if the Court considered the Conservation Groups' claims against the Secretary of the Interior and the Secretary of Defense separately, it would conclude that it lacked jurisdiction over those claims as well because they do not involve final agency actions—as this Court recently found for similar claims in a related case. *See Ctr. for Biological Diversity*, 2026 WL 3575718, at *5–6.

(analyzing a similarly worded statute and concluding it ousted other tribunals of jurisdiction over covered claims). The question for this case, then, is whether the Committee granted the exemption under subsection (h) or not. The Court concludes that it did because subsection (h) provides the exclusive avenue for the Committee to grant exemptions.

The parties agree that the Committee granted an exemption to the requirements of 16 U.S.C. § 1536(a)(2), which requires federal agencies to ensure their projects are not likely to jeopardize endangered species before engaging in projects that might harm endangered species. *See* 91 Fed. Reg. at 16,966; Pl.'s Opp'n at 28. Subsection (a)(2) provides that its requirements apply "unless [the] agency has been granted an exemption . . . by the Committee *pursuant to subsection (h)*." 16 U.S.C. § 1536(a)(2) (emphasis added). It does not admit any other exceptions. Similarly, when Congress "established a committee to be known as the Endangered Species Committee," it gave that Committee the power to grant exemptions only "*in accordance with subsection (h)*." *Id.* § 1536(e)(1)–(2) (emphasis added). Congress never authorized the Committee to grant any other kinds of exemptions. "Thus, all roads lead to subsection (h)." *NRDC*, 2026 WL 3521211, at *8 (analyzing the statute in greater depth, including with reference to surrounding subsections).

Because the only way for the Committee to grant an exemption from subsection (a)(2) is through subsection (h), and all agree that the Committee granted an exemption to subsection (a)(2)'s requirements, the Committee necessarily acted under subsection (h). And because Congress channeled all claims challenging decisions made "under subsection (h)" to the courts of appeals, the Conservation Groups must pursue their challenges to the Committee's exemption decision there. *See* 16 U.S.C. § 1536(n). This Court therefore lacks jurisdiction over the Conservation Groups' claims.

Fighting against Congress's special review scheme, the Conservation Groups raise three counterarguments. First, the Conservation Groups insist that Congress created other paths for exemptions outside subsection (h). Specifically, they argue that subsection (j) vests the Committee with independent authority to grant exemptions to subsection (a)(2)'s requirements even though Congress never mentioned such a path in subsection (a)(2) itself or in the subsection where it outlined the Committee's authority. Pls.' Opp'n at 31; *see also id.* at 8–9.

The Court is unpersuaded by the Conservation Groups' expansive reading of subsection (j). The provision provides only that "[n]otwithstanding any other provision of this chapter, the Committee shall grant an exemption for any agency action if the Secretary of Defense finds that such exemption is necessary for reasons of national security." 16 U.S.C. § 1535(j). This provision determines the outcome of the Committee's decision (the Committee must grant the exemption), but nothing in the phrasing suggests that Congress sought to create a new type of exemption. Subsection (j) does not even explain what kind of exemption it is talking about, much less what procedures would apply. Thus, the exemption in subsection (j) must reference the preexisting exemption power that Congress bestowed on the Committee in subsection (e)(2), which Congress specified must run through subsection (h).[5]

In a similar vein, the Conservation Groups point to other exemption decisions that it claims are not made under subsection (h), including subsections (g)(3), (i), and (p), to argue that not all exemption decisions run through subsection (h). *See* Pls.' Opp'n at 29–32. This Court

[5] The Conservation Groups argue that interpreting Section 1536 to channel all exemptions challenges through subsection (h) violates the rule against surplusage because Congress sometimes refers to exemptions granted under subsection (h) and other times refers merely to exemption decisions, implying there must be a difference between the two. *See* Pls.' Opp'n at 25–26. As this Court recently explained, however, "the preference for avoiding surplusage does not overcome all the other textual clues indicating that all exemptions run through subsection (h)." *NRDC*, 2026 WL 3521211, at *10 n.6.

has already addressed those provisions at length in its prior decision. *See NRDC*, 2026 WL 2026 WL 3521211, at *8–11. Although certain decisions *denying* an exemption before it ever reaches the Committee—such as rejections under subsections (g)(3) and (i)—may not fall within subsection (h) because they are not decisions made by the Committee, that "reveals nothing about which court may review exemption decisions made by the Committee." *Id.* at *10. As for subsections (j) and (p), where the Committee ultimately grants the exemption after either the President or the Secretary of Defense makes an outcome-determinative decision, Congress still channeled the decision through subsection (h), even if it altered the applicable procedures. *See id.* at *7–9.

Second, the Conservation Groups argue that the Court should construe the Committee's decisions as falling outside of subsection (h) because the Committee did not follow the procedural requirements of that subsection, expressly stating they did not apply. *See* Pls.' Opp'n at 21–22. NRDC made a similar argument, which this Court rejected. *See NRDC*, 2026 WL 3521211, at *10–11. "How the Committee acted in this case does not change Congress's statutory scheme. Congress created only one type of exemption, and it funneled challenges to those exemptions to the courts of appeals." *Id.* at *11. If the Committee failed to follow the necessary procedures under subsection (h) or any other applicable provision in the statute when it made its exemption decision, a court of appeals can hear that challenge.

Seeking to bolster their argument, the Conservation Groups point to the Committee's explanation of the procedures it needed to follow to issue the exemption. *See* Pl.'s Opp'n at 22. The Committee explained in its decision that "the application and other related requirements," which would ordinarily apply to a subsection (h) decision, "d[id] not apply" because "an application and an 'exemption applicant[ ]' . . . are not present in this situation where the

Secretary of War determines that an exemption is necessary for reasons of national security." 91 Fed. Reg. at 16,966. The Conservation Groups see this as proof that the Committee "did not make a decision under subsection (h)." Pl.'s Opp'n at 22.

But the Committee's explanation displays only the less remarkable proposition that the Committee took a different view than the Conservation Groups about the scope of subsection (j)'s notwithstanding clause. The Committee appears to have interpreted the notwithstanding clause to overcome more procedural requirements from other provisions in the statute than the Conservation Groups. But that does not establish that the Committee thought subsection (j) carved out an entirely new exemption process divorced from subsection (h). If the Committee erred in its analysis of exactly which procedures applied, review belongs elsewhere because it was still a decision under subsection (h)—albeit as modified by subsection (j)'s notwithstanding clause.

Third, the Conservation Groups suggest that they may bring their challenge to the extent it is framed as a claim that the Committee exceeded its statutory authority by granting an exemption without an application before it. *See* Pl.'s Opp'n at 36.[6] That claim, however, still challenges the Committee's decision under subsection (h), even if it suggests that the Committee could not properly invoke its authority under subsection (h) in the first place because it lacked a prerequisite. The claim therefore falls within Congress's review scheme for decisions under subsection (h). *See Mullin v. Doe*, 609 U.S. 324, 341 (2026) (holding that plaintiffs' claim that an agency had failed to take a predicate step necessary to make a decision which would be

[6] The Conservation Groups disavow any nonstatutory theory that the agency exceeded its authority and instead focus on a standard APA claim that the Committee's decision was "not in accordance with law." 5 U.S.C. § 706(2)(A); *see* Pl.'s Opp'n at 36.

unreviewable still fell within the judicial-review bar); *NRDC*, 2026 WL 3521211, at *10–11 & n.8.

## V. CONCLUSION

For the foregoing reasons, the Court grants Federal Defendants' motion to dismiss in full. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 23, 2026

RUDOLPH CONTRERAS
United States District Judge